**NOBLITT v. BARKER et al.**

**No. 9711.**

Court of Civil Appeals of Texas. San Antonio.

April 22, 1936.

Rehearing Denied Nov. 12, 1936.

Hornaday & Klein, of Harlingen, for plaintiff in error.

Lorimer Brown & Davis, Carter & Stiernberg, and Paul H. Brown, all of Harlingen, and Davenport & Ransome, of Brownsville, for defendants in error.

BOBBITT, Justice.

The opinion heretofore filed in this cause is withdrawn, and this opinion substituted therefor. The matters of record brought to the attention of the court in plaintiff in error's motion for rehearing have all been duly considered.

In the year 1929, James M. Barker and C. H. Peters owned a large tract of undeveloped land near the city of Harlingen, in Cameron county, Tex. They decided to make certain improvements upon and to sell the same as citrus fruit land. They employed engineers, surveyed, mapped, and platted the land, and filed in the public records of such county, on January 6, 1930, a subdivision of the property under the name of "Harlingen Citrus Garden." The owners caused an analysis of the soil to be made by an authority on such matters, who found and declared the same to be satisfactory citrus fruit land.

On August 30, 1930, Barker and Peters, in pursuance of their plan to sell the land, entered into a written contract with Valley Properties, Inc., a corporation, the provisions and obligations of which are, in reality, the subject of this suit. The material provisions of such contract follow:

"Sales Contract.

"The State of Texas ⎰ss:
"County of Cameron ⎱

"Know all men by these presents: That we, James M. Barker and C. H. Peters, both of Kaw, Kay County, State of Oklahoma, herein called parties of the first part, and Valley Properties, a corporation, duly incorporated under the laws of the State of Texas, domiciled at Harlingen, Cameron County, Texas, herein styled party of the second part, have this day made and entered into the following articles of agreement, to-wit:

"I.

"Parties of the first part are the owners of all of the hereinafter described real estate, free and clear of homestead and dowery rights, and are able to convey or cause the same to be conveyed to party of the second part or order, a good and merchantable title, in accordance with the terms, conditions and stipulations hereof, all of the following land, situate, lying and being in Cameron County, Texas, about four miles East of the City of Harlingen, (property described) * * * and:

"Whereas, party of the second part is desirous of purchasing said tract of land,

sub-dividing and selling same for development purposes, and upon the terms, conditions and stipulations herein set forth;

"Now therefore, parties of the first part, for and in consideration of the price to be paid as herein set forth, terms, conditions and stipulations herein contained and to be observed and kept by party of the second part, do hereby sell and agree to convey to party of the second part or order, all of the above described land, by terms of general warranty deed or deeds. The price to be paid by party of the second part to parties of the first part or order, is One Hundred and Fifty ($150.00) Dollars per acre and in the manner as hereinafter stated.

"II.

"Parties of the first part, will upon demand, and within a reasonable time thereafter, furnish to party of the second part a complete authentic abstract of title down to this date showing title to said land well vested in them, subject only to certain notes now held by Houston Brashear covering the entire tract, and certain taxes which are to be arranged, and the party of the second part may submit such abstract to any attorney of his selection for examination, and if any objections appear to the title, the same shall be within ten days after delivery of such abstract, pointed out in writing, and parties of the first part shall have a reasonable time in which to meet such objections. When the title has been approved by party of the second part or his attorney, subject however to the above mentioned encumbrance, then parties of the first part will make application to Cameron County Water Improvement District No. 1 to have included or incorporated within such water district the North One Hundred and Sixty (160) acres, but are to be at no expense in this connection. That they cause to be cleared of trees, brush, cactus etc. a right-of-way for the construction of a canal, from a convenient point in the West line of said tract of land to a point near the center of this 160 acre tract, and in accordance with the advice of the engineer of said water district. That they will cause to be cleared and grubbed to a proper depth, all trees, brush, cactus, etc. from a 100 foot road or boulevard, to begin in the North line of this tract, near the center between the N. W. and N. E. corners of such survey, and shall continue South through said survey; provided that same shall not be required to be so cleared further south than the railroad tract of the S. A. & A. P.

Ry. at the present time and until developments justify continuing same on to the Arroyo Colorado. That they will cause said lands to be surveyed, and suitable stakes and markers set at the corners of each forty acre subdivision, agreeable to party of the second part, and will also cause stakes to be set at the corners of each ten acre tract of such forty acre, blocks, and all in accordance with the reasonable desires of party of the second part. It is understood that said large tract of land is to be developed and taken into said water district in Four sections, of approximately 160 acres each, beginning with Section No. 1 off of the North end of said survey, and continuing south in numerical order, each section extending the entire width East and West with said survey.

"III.

"Party of the second part agrees, that he will immediately engage actively and primarily upon the development and sale of said section No. 1, furnishing all necessary capital, salesmen, advertising and thing appertaining thereto, and will confine his best endeavors continuously to the rapid sales of said lands and in accordance with the terms, conditions and stipulations hereof, and will begin such sales at a convenient point in said section No. 1 and will sell such lands in continuous and adjacent segments, and tracts, until all of the land in such section No. 1 has been sold or approximately all sold. That he or it will notify the parties of the first part, when it is necessary to have application made to Cameron County Water Improvement District No. 1, include section No. 2, and that the same order sales will be conducted in said section No. 2, 3, and 4. Second party will promptly pay Cameron County Water Improvement District No. 1 all charges and expense for having said lands included and incorporated within such water district, and for the perpetual water rights to said lands and will hold first parties harmless as against and as to any such expense or charges. Second party does not assume or agree to pay any irrigation bond tax or fixed water charges that may be assessed against said lands.

"IV.

"As second party shall from time to time make sales of subdivisions of such land, first parties will deliver deed or deeds to second party, conveying to second party such tract of land, in consideration of One Hundred and Fifty Dollars per acre, Fifty

dollars per acre to be paid in cash, and vendor's lien notes executed and delivered by second party in favor of first parties or order, aggregating in amount one hundred dollars per acre, bearing interest from date thereof at the rate of six per cent. per annum, interest payable annually, both principal and interest payable at the office of the Valley Investment Company, at Harlingen, Texas. Said notes are to be 5 in number, and are to mature one each year after date, with the usual acceleration provision as to maturity, and with the usual provision for attorney's fees. It is understood and agreed that as any section becomes a part of or is included within such water district, that thereupon the party of the second part shall become absolutely bound to take and pay for all such lands thus included, also all charges made by Cameron County Water Improvement District No. 1 for taking such lands into said irrigation district, including water rights to such lands.

"Second party hereby binds and obligates itself, its successors and assigns, that it will fully complete the sales of lands within said section Numbers One and Two, aggregating 320 acres, more or less, on or before June 1st, 1931, and that should there be any unsold land or any land remaining unsettled for with parties of the first part, within said sections Nos. One, and Two, that party of the second part complete the sale thereof, and will have deed or deeds executed to it and will pay therefor on the same basis as hereinbefore stipulated. That in the same order and manner as hereinbefore stipulated, second party will continue its operation, sales, etc. with reference to said sections Numbers Three and Four, and binds itself to sell the remainder of said large tract on or before June 1st, 1932, or in the event any portion thereof remains unsold on said last mentioned date, that deed or deeds are to be executed in favor of party of the second part, at the above stipulated price and terms.

"V.

"It is expressly agreed and understood that in the event of the failure of party of the second part to keep and observe any of the terms, conditions or stipulations of this agreement, and should such failure continue to said date of June 1st, 1931, then in such event, parties of the first part may at their option, by giving to party of the second part, 30 days notice in writing, declare this contract null and void, and of no further force or effect, and may re-enter and take possession of said unsold lands, to the same extent and for all purposes as if these presents had never been executed, but such action shall not be construed as in any manner releasing party of the second part its obligation to purchase and pay for any lands which may have been included within such water district, nor shall it be released from its obligation to pay Cameron County Water Improvement Dist. No. 1, all such charges as may be made for water rights and the taking of such land into the said water district.

"VI.

"The Valley Investment Company of Harlingen, Texas, is hereby appointed and constituted the agent and attorney in fact for the parties of the first part, with full power and authority to prepare all deeds, releases and other documents for execution by the parties of the first part, and to make deliveries thereof, and make collections of monies, and do such other things as may be necessary and in their or its judgment to the best interests of the said parties of the first part. (Duly executed by all parties.) * * * "

The Valley Properties, Inc., was owned and dominated by H. W. Bush and Sid Berly, and these two parties, as officers or agents of the corporation, started operations for the sale of the land in small tracts to prospective purchasers. Among others, they conducted one J. Clifford Noblitt, of the state of Indiana, plaintiff in error here, to the Magic Valley, and after the usual pleasant entertainment was provided, he was driven around and through the farms and citrus orchards in the vicinity of the land in question, and finally was permitted to "sign applications to purchase" approximately 34 acres of land in the then undeveloped "Harlingen Citrus Gardens" at an agreed price of $1,140 per acre. It is undisputed that as a result of this transaction Noblitt paid said corporation approximately $26,000 in cash and had executed vendor's lien notes for the balance of approximately $12,000. It seems undisputed that Bush and Berly organized or used still another corporation, the Western Development Corporation, as a market for or holder of the vendor's lien notes they acquired from purchasers as agents of the operating and "selling corporation," Valley Properties, Inc. Furthermore, Barker and Peters jointly owned and held first vendor's lien notes against Noblitt, or his grantor, in the

amount of about $100 per acre, under their agreement as owners of the land with Valley Properties, Inc., and under which the last-mentioned corporation acquired the title it sold to Noblitt.

In 1934, after several visits to the property and after the advent of the "Great Depression" and the visit of a destructive hurricane, following the apparent failure of the "Harlingen Citrus Gardens" to prosper or produce, and after a general check-up on the situation, plaintiff in error filed this suit in the district court of Cameron county against defendant H. W. Bush and Sid Berly, individually, their two said corporations, Valley Properties, Inc., and Western Development Corporation, and James M. Barker and C. H. Peters, alleging that he had been cheated and defrauded in the sale of the land to him through false and fraudulent representations; that the land sold to him was not of a value in excess of $150 per acre, together with other charges of bad faith on the part of those who induced him to invest $1,140 per acre in the property; that all of the named defendants were in some way responsible for the wrongs of which he complained. Specifically, he charged Bush and Berly individually and through their corporations, and particularly these two parties as agents of the Valley Properties, Inc., "acting as co-workers, agents, and co-principals of C. H. Peters and James M. Barker," induced him to purchase the land. Noblitt prayed for cancellation and rescission of the contract; for judgment against all the named defendants, jointly and severally, for the $26,000 paid in cash, with interest thereon, and for cancellation of the outstanding purchase notes. In the alternative, or second count, he prayed for damages against Valley Properties, Inc.; C. H. Peters, James M. Barker, Sid Berly, and H. W. Bush.

Upon the trial before a jury, and based on their verdict finding that Noblitt had been defrauded by H. W. Bush, the court entered judgment rescinding and canceling the contract of sale and the two deeds from Valley Properties, Inc., to Noblitt, covering the land purchased by him; canceling all the outstanding vendor's lien notes executed by Noblitt as part purchase price of the land to said corporation, and relieving Noblitt of any personal liability on the vendor's lien notes held by Barker and Peters, and providing that they have and retain their lien against such property sold to Noblitt as security. The court further found that Noblitt was entitled to a personal judgment against Valley Properties. Inc., for the amount of money paid to it by him for the land in question, together with interest thereon, and impressing and foreclosing an equitable lien on the property in question to apply on the payment of such judgment.

The court found and held, independent of the jury, that the contract between Barker and Peters as sellers and Valley Properties, Inc., as purchaser, of date August 30, 1930, was a "contract of sale and not a contract of agency," and refused to decree judgment against them in favor of Noblitt personally for any amount.

The jury found that the reasonable market value of the land in question was only $200 per acre, instead of $1,140 per acre, the price at which it was sold to Noblitt; that the lands had been misrepresented to Noblitt by defendant, H. W. Bush; that he had relied upon such misrepresentations and was thereby induced to purchase said lands at the price stated, and that defendant Western Development Corporation was used by defendant Bush for the purpose of assisting Bush to avoid the defense of fraud in connection with the transaction. The judgment further denied Noblitt any recovery against H. W. Bush and Sid Berly in their individual capacities.

The Western Development Corporation, as shown in another and separate proceeding in this court, appealed from an adverse judgment entered against it in this cause, and the action of the trial court in that proceeding was affirmed on certificate duly filed in this court November 8, 1934.

Through appropriate exceptions to the action of the trial court, and otherwise, plaintiff in error, Noblitt, alone, here now presents this appeal.

 As we view the record before us, there is in reality only one question to be determined by us in this cause, to wit: Did the trial court err in holding that the said contract between Barker and Peters on the one hand, and Valley Properties, Inc., on the other, was an outright contract of sale and not a contract of agency?

The contract in question was introduced in evidence and fully considered by the court below. Apparently such contract was received in evidence along with all other testimony and evidence presented by plaintiff in error, under his pleadings, and the court reached the conclusion stated and here complained of, after all the evidence was in. We have also carefully reviewed

the contract and considered all the evidence in the record which has any relation thereto, and we do not find any error on the part of the trial court in his ruling that the contract is one of sale and not of agency.

We are not unmindful of the seriousness of the questions raised by plaintiff in error on the propositions that all parties to such a transaction as this record reveals, wherein a person has been overreached, oversold, and defrauded, should be held to account for any participation in the scheme. It is sometimes a fact, and appears to be true in this case, that Bush and Berly organized and used the corporations here referred to as agencies or instrumentalities through which to carry on their operations. In fact, the jury found from the evidence that Bush used the Western Development Corporation for the purpose of protecting himself against charges of fraud in connection with this transaction. Apparently, however, he complied with the law in securing a charter for his "corporate protection," and plaintiff in error, charged with knowledge of the law, chose to deal with this legal entity, Valley Properties, Inc., in this transaction, and he must be here bound as he voluntarily agreed and contracted to bind himself.

It seems clear that the trial court, following the finding and verdict of the jury and the law applicable to the facts of the case, gave plaintiff in error every relief possible. The record plainly shows that plaintiff in error made his contracts with and assumed his obligations to these corporations, and upon representations made by the agents of such corporations. It may be, and in this case is, unfortunate that he made a serious mistake in "exercising his right and freedom of contract." That is a matter, however, which the courts cannot and should not undertake in any way to control.

Defendants in error, Barker and Peters, both testified in the case. The record before us contains no testimony or evidence sufficient to justify this court in overruling the action of the trial court in its holding that under the terms of the written contract of sale and all testimony adduced on the trial, Barker and Peters had made an outright sale of the land in question, and that they were not agents of or coprincipals with the Valley Properties, Inc., Western Development Corporation, and Bush and Berly, in the transactions of which plaintiff in error complains.

The above contract, when tested by the rules of law set forth in the cases cited by plaintiff in error, as well as by defendants in error, and herein cited, is, in our opinion, one of sale and not agency. When considered and construed fairly, from its own wording and provisions, the contract provides for a sale of the property. It is not, and cannot be fairly said to be an option. If it were an option to purchase, instead of an enforceable contract of sale, plaintiff in error would have a different question. Lovett v. Paschen (Tex.Civ. App.) 241 S.W. 685; Paschen v. Lovett (Tex.Com.App.) 255 S. W. 385. Under the law, and by virtue of the provisions of the contract, it is clear that Barker and Peters could have forced Valley Properties, Inc., to take and pay for all of the land. This right of specific performance on the part of Barker and Peters against the corporation shows that the contract is not one of agency, but one of sale, as found by the court below. The fact that the corporation is now unfortunately insolvent, or that Bush may have used the corporate laws of this state in these particular transactions to the detriment of the purchasers of the property, does not change the well-established rules of law which apply, and under which Barker and Peters find themselves beyond reach of plaintiff in error in this proceeding. It may be that the insolvency of his corporations and the actions of Bush, as found by the jury, has resulted in injury to Barker and Peters as well as plaintiff in error. In any event, the rights of the parties to this appeal must rest upon the provisions of the written instruments which they respectively executed, and the laws applicable thereto. Plaintiff in error chose to deal with Bush and his corporations. He executed his contracts with such parties, and not with Barker and Peters. Now that he has experienced losses, he cannot overlook his own serious and practical mistakes and find relief in other contracts or agreements to which he was not a party, and which, under the law and the facts he has submitted to the court, afford him no recourse against defendants in error. 2 Tex. Jur. p. 500, et seq.; 3 Tex.Jur. p. 1059, et. seq.; Paschen v. Lovett, supra; Ansley Realty Co. v. Pope & Smith, 105 Tex. 440, 151 S.W. 525, and authorities discussed.

Finding no reversible error herein, the judgment of the trial court is affirmed.

We have also duly considered the motion for rehearing filed by plaintiff in error herein, and it is overruled.