**Sid G. RAMSEY, Individually and d/b/a Ramsey Properties, Appellant,**

v.

**John T. GORDON et al., Appellees.**

**No. 5817.**

Court of Civil Appeals of Texas, Waco.

June 8, 1978.

Rehearing Denied June 29, 1978.

Stewart DeVore, Jr., Bagby, McGahey, Ross & DeVore, Arlington, for appellant.

Michael J. Rogers and Kenneth W. Boyd, Cleburne, for appellees.

HALL, Justice.

Sid G. Ramsey individually and d/b/a Ramsey Properties, and Joe Robertson individually and d/b/a Western Real Estate, brought this suit against John T. Gordon, Winnie Barton and James M. Barton individually and d/b/a James M. Barton Real Estate, and Roy F. Cox individually and d/b/a Joshua Real Estate. Plaintiffs alleged that plaintiff Ramsey individually is in the business of buying and holding land for resale; that Ramsey d/b/a Ramsey Properties, is a licensed real estate broker and is in the business of real estate brokerage receiving a commission of the sales price as compensation for his services; and that plaintiff Robertson individually and d/b/a Western Real Estate is also a licensed real estate broker and receives a commission of the sales price as compensation for his services. Plaintiffs pleaded in essence that defendant Cox was defendant Gordon's listing agent for the sale of approximately 181 acres of land owned by Gordon in Johnson County; that Gordon agreed to pay Cox a commission of 6% of the sales price; that by written contract dated September 21, 1973, Gordon agreed to sell Ramsey the land for $800.00 per acre; that under the contract, Ramsey was to receive 3% of the sales commission, Robertson was to receive 1.75% of the commission, and Cox was to receive 1.25%; that thereafter Gordon breached the contract on December 21, 1973, by conveying the property to Donald H. Burnett and wife for $800.00 per acre; that defendants Bartons and Cox were Gordon's agents in the sale to the Burnetts and were paid a 6% commission by him for the sale; and that as a result of Gordon's breach, Ramsey lost $90,000.00 profit he would have made on a resale of the property. Ramsey prayed for a recovery of $90,000.00 against Gordon; and he and Robertson prayed for recoveries of $4,344.00 and $2,534.00, respectively against the other defendants "representing co-brokerage commissions" lost because of the misconduct on the part of said defendants.

Defendants affirmatively pleaded several grounds for avoiding the contract, including the contention by Gordon that Ramsey and Robertson, as Gordon's agents for the sale of the property, fraudulently breached their duty by failing to obtain for him the highest price then obtainable and known to them. Additionally, based upon the alleged fraudulent breach of the agency relationship, Gordon filed a cross-action against Ramsey and Robertson for $90,000.00 actual damages and $100,000.00 exemplary damages.

Trial was to the court without a jury. Robertson did not personally appear at the trial; however, he was represented there by the attorney who also represented Ramsey. Virtually all of the trial proceeding was devoted to the conflicts and contentions between Ramsey and Gordon. After the hearing, a take-nothing judgment was rendered against all parties.

On Ramsey's motion, the court filed findings of fact and conclusions of law. They support defendants' affirmative defenses for avoiding the contract.

Only Ramsey appeals. We affirm the judgment.

In September, 1973, the parties began negotiating the contract in question, and it was reduced to typewritten copies by Ramsey and a person whom he identified as his "sales associate." Thereafter, the copies were delivered back and forth "three or four times" between Ramsey and Gordon by Robertson and Cox while changes in the original terms relating to the consideration and the closing date were being made and initialed by Ramsey and Gordon. Although the contract is dated September 21, 1973, the record shows without contradiction that the final charges in it were made sometime in October, probably around the middle of that month according to Ramsey, and it was then signed. The evidence supports the inference that Ramsey was the last party who signed the contract, after it was examined by his lawyer.

In its final form the contract sued upon contained the following provisions, among others:

"John T. Gordon hereinafter called Seller, acting through the undersigned and duly authorized agent, hereby sells and agrees to convey unto Sid G. Ramsey, Trustee, or his assigns, hereinafter called Purchaser, the following described [181 ± acres] . . .

"The purchase price is $144,800.00 or $800.00 per net surveyed acre, payable as follows: $1,000.00 cash as part payment, receipt of which is hereby acknowledged by said agent.

"Purchaser to pay an additional principal down payment of $13,480.00 or 10% of the total purchase price plus $9,774.00 in prepaid interest (12 months) will be made on the date of closing.

"For the remainder of the purchase price, Purchaser agrees to make, execute and deliver to Seller their promissory note in the amount of $130,320.00, payable with interest at the rate of 7½% per annum, and during the first seven years only the interest shall be payable annually, in advance, but commencing the eighth year, the first principal payment will be due ninety-six (96) months from delivery of deed in the amount of $26,-064.00 plus the accrued interest on the unpaid balance until the full amount of both principal and interest is paid in full.

"It is further provided that the Purchaser, after delivery of deed by giving thirty (30) days written notice, may pay the entire balance of the said promissory note together with accrued interest thereon, except that all payments in the calendar year of closing may not exceed 29% of the total purchase price.

"The above described note shall be secured by Vendor's Lien retained in Deed conveying the property to purchaser and shall be additionally secured by Deed of Trust . . . There will be no personal liability on the promissory note. The holder of the promissory note has no recourse except the subject property.

"Said Deed of Trust shall contain a partial release clause, allowing Purchaser to release parcels of land from the operation of the above described liens . . . in a minimum of five (5) acre tracts . .

to be paid for at the rate of $1,000.00 per acre . . . Payment for all such partial releases shall be credited to the principal of said note.

"Seller agrees to pay the undersigned duly authorized agent a commission of six percent (6%) of the purchase price in cash at time of closing for negotiating this sale.

"Closing of this transaction shall be on or before Sept. 30, 1974, at Purchaser's discretion.

"EXECUTED in triplicate originals, each of which shall have the force and effect of an original this 21st day of September, 1973.

| "/s/ Sid G. Ramsey | | /s/ Sid G. Ramsey |
|---|---|---|
| Sid G. Ramsey, Trustee Purchaser | 3% | Agent for Ramsey Properties |
| "/s/ J. T. Gordon | | /s/ Joe Robertson |
| John T. Gordon, Seller | 1¾% | Agent for Western Real Estate Co-Broker |
| | | /s/ Roy F. Cox |
| | 1¼% | Agent for Joshua Real Estate Co-Broker |

On November 2, 1973, Gordon, through his attorney, sent a letter to Robertson stating that he had determined "to exercise his option not to convey his property" for the reason (among others set forth in the letter) that "the $1,000.00 in cash which was to be paid to him by the buyer has not yet been received." Thereafter, on December 21, 1973, Gordon sold the property to Donald H. Burnett and wife (at the price of $800.00 per acre) for $13,905.30 cash and a promissory note for the balance payable in 48 equal semi-annual payments with interest. Meanwhile, in December, 1973, Ramsey, acting for himself as owner, began negotiating for the sale of the property to one James C. Morgan, and offered to sell it for $1,250.00 per acre. These negotiations ended on January 25, 1974, with a written offer by Morgan to buy the property from Ramsey at the price of $1,000.00 per acre. It is this offer and additional increase in the value of the property to the closing date in September 1974, provided in the contract, upon which Ramsey bases his claim against Gordon for lost profits. About the time Morgan was making this offer, Ramsey

learned that Gordon had sold the property to the Burnetts.

Ramsey and Gordon dealt with each other only through Robertson and Cox, and they did not personally meet until after this suit was filed. The evidence supports implied findings that Cox was acting in the matter only as Gordon's agent, but that Robertson was acting either solely as Ramsey's agent or as agent for both Ramsey and Gordon. Ramsey testified that he operated two businesses, "Ramsey Realty" and "Ramsey Properties," that both are sole proprietorships owned by him, that under Ramsey Realty he acts as a real estate agent selling others' property for a commission, and that under Ramsey Properties he purchases property for himself. Although Ramsey now claims he was only a purchaser in the transaction with Gordon, he testified on the trial that he was both agent and purchaser—that he was "a purchasing agent." Specifically, Ramsey testified again and again that under the contract he was Gordon's agent for the sale of the property. The trial court expressly found that he was Gordon's agent. The court also found that Ramsey knew the property was appreciating in value when the contract was made, and "up until and through January, 1974"; that Ramsey failed to disclose that fact to Gordon; that he became personally interested in the property transaction by attempting to purchase the property himself; that the appreciation in value of the property from $800.00 per acre to $1,000.00 per acre was a material fact relating to the sale of the property; and that Ramsey failed to find a purchaser for Gordon for the best price available. Upon these findings the court concluded that Ramsey had breached his agency agreement and duties under the contract, and that the contract was therefore voidable at Gordon's election.

■ Ramsey does not challenge the finding that the property was increasing in value when the contract was being negotiated and made with Gordon, nor the findings that he knew the value was increasing and failed to disclose that fact to Gordon. Indeed, he may not do so because they are

amply supported by the evidence and its inferences. His response to the conclusion that he breached his duties as Gordon's agent is to argue that he was only a purchaser and to cite Gordon's testimony that Gordon believed $800.00 per acre was a fair price when he made the contract. The over-all import of the record is that when it served Ramsey's purposes he would claim that under the contract he was Gordon's agent, but that in fact he used the contract to speculate with the property to his personal advantage without disclosure to Gordon. As we have said, the court found that Ramsey was Gordon's agent. Ramsey's testimony supports that finding.

■ Whenever an agent breaches his duty to his principal by becoming personally interested in an agency agreement, the contract is voidable at the election of the principal without full knowledge of all the facts surrounding the agent's interest. *Osborne v. Keith,* 142 Tex. 262, 177 S.W.2d 198, 201 (1944); *Allison v. Harrison,* 137 Tex. 582, 156 S.W.2d 137, 140 (1941); 2 Tex.Jur.2d 572, Agency, § 122. In the *Allison* case, the court set forth as the "settled rule" that "an agent in dealing with a principal on his own account owes it to the principal not only to make no misstatements concerning the subject matter of the transaction, but also to disclose to him fully and completely all material facts known to the agent which might affect the principal; and that unless this duty on the part of the agent has been met, the principal cannot be held to have ratified the transaction."

Other reasons for affirming the judgment are also brought forward by Gordon, but we need not examine them.

The judgment is affirmed.