## J. C. Presley v. T. Cooper Et Al

No. A-5264. Decided November 9, 1955.
Rehearing overruled December 14, 1955.
(284 S.W. 2d Series 138)

*Hughes, Ogden & Ogden,* of Guymon, Okla., and *E. E. Coons,* of Texhoma, for petitioner.

The Court of Civil Appeals erred in holding that no material issue of fact existed and that the trial court committed no error in so holding. Gulf, C. & S. F. Ry. Co. v. Pratt, 183 S.W. 103, error refused; Meador v. Wagner, 70 S.W. 2d 794, error dismissed; Shirley v. Waco Tap R. Co., 78 Texas 131, 10 S.W. 543.

*King Fike,* of Dalhart, for respondents.

On the proposition that to properly plead an act of conver-

sion there must have been a demand and refusal to deliver the property in question and that plaintiff must prove his right of posession. Panhandle & Santa Fe Ry. Co. v. Talmage, 206 S.W. 862; Lang v. Harwood, 145 S.W. 2d 945; Satterfield v. Knippel, 169 S.W. 2d 5.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This suit was instituted by petitioner, J. C. Presley, against respondents, T. Cooper and Eli Willis, for damages for the alleged conversion by them of two mares. Respondents denied that they had converted the mares and Cooper filed a cross-action for debt and damages against Presley. Both Presley and Cooper filed motions for summary judgments. The motion of Presley was overruled and the motion of Cooper was granted. That judgment was affirmed by the Court of Civil Appeals. 278 S.W. 2d 237.

The suit grew out of a written contract, dated October 14, 1952, by the terms of which Cooper agreed to "break, train and race" two thoroughbred mares owned by Presley and to feed them and care for them for a consideration of $200.00 per month, payable on the first day of each month, the first payment to be due on November 1, 1952. The contract contained this provision:

"It is further understood and agreed that the horses herein-above described shall not in any event be held for or stand good for, or be security for, any bills or accounts, contracted by Party of the Second Part. And Party of the Second Part hereby specifically agrees that under no circumstances or conditions, either provided by law or otherwise, shall he claim or assert either directly or indirectly any lien or other possessory right in said horses."

Presley failed to meet the first payment, and on November 21, 1952, Cooper posted a notice of sale at the courthouse in Dumas, Moore County, in which he stated that he was holding the mares for expense of feeding and training, and that he would sell the same at public auction on the 6th day of January, 1953, as under execution. On that day Cooper executed a report of the sale, reciting that he had sold the two mares to Eli Willis and that he had applied the amount received from such sale ($10.00 per head) to the indebtedness owing him for keeping such mares, and had delivered a bill of sale to the purchaser.

Willis was Cooper's attorney. Thereafter, on February 4, 1953, respondent Willis addressed a letter to Presley enclosing a copy of the report of sale and informing Presley that Coper had the mares at San Angelo. In that letter he made this statement: "I purchased the mares and sold them to Mr. Cooper and have delivered him a bill of sale on them." On February 20, 1953, he addressed another letter to Presley in which he stated that he did not feel that there was any question of the legality of the procedure. After the receipt of that letter Presley instituted this suit for damages for tort based upon the theory of a conversion of his mares by Cooper and Willis. Cooper and Willis answered, denying that they had converted the mares, and Cooper filed a cross-action against Presley for $200.00 per month for the care and training of the mares for eighteen months. Included in his cross-action was a claim for a large amount of damages based upon the untenable ground that the contract was still in effect. We find it unnecessary to discuss that phase of the case, for the reason that the summary judgment was for $3,600.00 for the care and training of the mares to date of trial and by seeking and procuring a judgment for that amount Cooper abandoned his claim for additional damages.

Presley filed a motion for a summary judgment on all the issues, except the amount of his damages. Attached to his motion were copies of the report by Cooper and the letters by Willis above mentioned. That motion was overruled. Cooper filed a motion for summary judgment for $200.00 per month for the entire period from November 1, 1952, to date of trial. The motion was not verified, nor was any affidavit attached thereto. It was based upon the ground that the pleadings, affidavits and admissions on file, together with a copy of the contract, showed that there was no genuine issue as to any material fact. The affidavit referred to was doubtless the affidavit made by Willis in replying to Presley's motion for summary judgment. In that affidavit Willis confirmed the fact that the sale was made as stated in the report filed by Cooper; that he, Willis, was the purchaser and that he, in turn, gave Cooper a bill of sale for the mares. He further stated that all that procedure was solely for the purpose of trying to get Presley to pay what he owed Cooper. In their answer to plaintiff's first amended petition the respondents alleged that the proceedings of advertising and selling the mares to Willis were simulated; that no actual sale was made or intended.

Under any view the pleadings and affidavits of Willis could

172

have done no more than present an issue of fact as to Presley's claim of conversion. Clearly, the trial court could not determine as a matter of law from the affidavit of Willis, in the light of the report of sale made by Cooper and the letters written by Willis, above referred to, that the sale was simulated. But even if it should be granted that the purpose which respondents had in mind was to induce Presley to pay the amount owing by him to Cooper, that would not prevent their acts from constituting conversion.

■ All parties agree that the relationship between Presley and Cooper was that of bailor and bailee. It is elementary law that a sale of property by the bailee in violation of the terms of the bailment contract is a distinct act of dominion over the property in derogation of the bailor's title and gives rise to an action for conversion. In Bowers' The Law of Conversion, Sec. 84, pp. 67 and 68, the rule is stated as follows:

"It is accordingly the rule that an unauthorized sale of the bailed property is a conversion of it and *ipso facto* puts an end to the contract of bailment and the bailor is entitled to sue in trover for the conversion. It is said that in case of such wrongful sale trover will lie either against the bailee, the purchaser or any one claiming under the sale. Certainly it may be maintained against the bailee, for by the sale he knowingly asserts and exercises rights over the property contrary to the bailment, and exercises dominion in derogation of the rights of the bailor." In 6 American Jurisprudence, Bailments, Sec. 125, the rule is stated in this language:

"It is generally held that any unauthorized attempt on the part of the bailee by sale, lease, pledge, or otherwise, to transfer the title or possession of the subject matter of the bailment, except to the extent that he may have an assignable interest therein, constitutes a conversion thereof and is regarded as terminating the bailment."

Many cases are cited which fully support the text. The same rule is stated in different language in 8 Corpus Juris Secundum, Bailments, Sec. 32a. See also City National Bank of Eastland v. Conley, 228 S.W. 972, no writ history. The sale by Cooper was in direct violation of the epress terms of the contract of bailment quoted early in this opinion, and the intent to convert will be conclusively presumed. Gulf, C. & S. F. R. Co. v. Pratt, 183 S.W. 103, error refused.

■ The principal ground relied upon by respondents to sustain the judgments of the courts below is that there had been no demand by Presley for possession of the mares and a refusal by Cooper to deliver possession. In many cases of bailment a demand for possession and a refusal to deliver possession of the bailed property are necessary prerequisites to the maintenance of a suit for conversion. Such a demand and refusal are merely evidence of a conversion, and where a conversion by the bailee cannot otherwise be shown than by his refusal to comply with the demand for possession, such a demand and refusal are necessary. But they are not necessary if the other evidence establishes an act of conversion. The rule is well expressed by the Supreme Court of Delaware in Mastellone v. Argo Oil Corp., 46 Del. 102, 82 Atl. 2d 379, 384, in this language:

"To us the purpose of the 'demand and refusal' rule, in those cases where it applies, is simply to settle whether there has been a conversion or not. If from other circumstances it is clear that the tort has been committed, the question needs no such further settlement, and the court moves on to whatever other questions are in the case, usually the assessment of damages."

The Court of Appeals of Georgia in Evans v. Grier, 29 Ga. App. 426, 115 S.E. 921, expresses the rule in this language:

"Any act of dominion by a bailee over the property bailed, not in pursuance of the contract of bailment, but adverse to the title of the bailor, amounts to a conversion by the bailee, and no demand on the bailee to redeliver to the bailor is necessary."

To the same effect see Knowles v. Smith, 190 Michigan 409, 157 N.W. 276; Terrien v. Joseph, 73 Rhode Island 112, 53 Atl. 2d 923; Hochstetler v. Graber, 78 N. Dakota 90, 48 N.W. 2d 15; Meador v. Wagner (Tex. Civ. App.), 70 S.W. 2d 794, error dismissed.

■ The right of Presley to maintain his suit for conversion seems clear to us. In direct violation of his written contract Cooper sold these mares to Willis and according to his own written report applied the proceeds of the sale to the indebtedness owing to him by Presley. That was a distinct, independent act of conversion rendering a demand for possession unnecessary. The fact that the purpose in the minds of Cooper and Willis may have been to induce Presley to pay Cooper some money is immaterial. The material fact is that Cooper exercised wrongful dominion over the bailed property and is now holding that prop-

erty not under the contract of bailment, but under a bill of sale executed to him by Willis.

■ In his pleadings Presley acknowledged an indebtedness to Cooper of $440.00 for the care and training of the mares prior to their conversion. Respondents seem to construe that pleading as an acknowledgment by Presley that the contract of bailment is still subsisting. We cannot agree with that reasoning. It is an acknowledgment merely that while the contract was subsisting an indebtedness accrued, and clearly not an acknowledgment that Presley owed Cooper $200.00 for each month after the mares were converted. Presley's suit is for damages for conversion and not on the contract.

The judgments of the trial court and the Court of Civil Appeals are both reversed and the cause is remanded to the trial court for a trial in which the court will be guided by the law as declared in this opinion.

Reversed and remanded with instructions.

Opinion delivered November 9, 1955.

Rehearing overruled, December 14, 1955.