IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00002-CV

 

Jose Luis Lopez,

                                                                                    Appellant

 v.

 

Amy Elizabeth Lopez,

                                                                                    Appellee

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court No. 2005-2429-1

 



O p i n i o n










 

Jose Lopez sued Amy Lopez (now Amy Avila), his
former sister-in-law, for conversion of $15,000.  After a bench trial, the
court rendered a take-nothing judgment.  Upon review of the legal and factual
sufficiency of the evidence, we will reverse and remand for a new trial.

I.  Background

In September 2002, Wenceslao Lopez, Jose’s brother
and Amy’s then-husband, was detained by the Immigration and Naturalization
Service (INS) in San Antonio.  A cash bond for Wenceslao’s release was set at
$15,000.  Jose got $15,000 in cash from his trust account to put up the cash bond.[1] 
Amy and Jose then drove together from Waco to San Antonio to obtain Wenceslao’s
release.  When they arrived at INS, Jose asked Amy to go inside to post the cash
bond because he was concerned that the INS would also detain him.  Amy went in
with the money, but the INS did not accept cash and asked Amy to return with a
cashier’s check.  Amy and Jose went to a bank, Amy gave the cash back to Jose,
and he secured a cashier’s check payable to the INS with his name as the
remitter.  Jose then gave the check to Amy, who returned to the INS, posted the
bond using the cashier’s check, and obtained a receipt for it in her name.  The
receipt allowed only the person who posted the bond to reclaim the money once
the INS case was concluded.

In 2003, Amy and Wenceslao separated and began the
divorce process.  The INS receipt became an issue because Wenceslao’s INS case had
been resolved, the cash bond could be released, and Wenceslao told Amy that
Jose wanted his money back.  Approximately six months after the divorce was
final in December 2003, Amy sent the necessary paperwork to the INS and
obtained the $15,000, which she then spent.

In July 2005, Jose filed a “Motion to Show Cause”
seeking a court order that Amy surrender possession of the INS receipt.  When Amy
refused to return the receipt or the money, Jose filed an amended petition
alleging that Amy had converted the $15,000.  On the day of trial, Amy filed a supplemental
answer that asserted the statute of limitations and the statute of frauds as affirmative
defenses.

At trial, Jose testified that the $15,000 cash
bond was not a gift or a loan and that he expected return of the cashier’s
check proceeds held by the INS.  Amy testified that she considered the money to
be a gift for securing Wenceslao’s release.  The trial court rendered a
take-nothing judgment against Jose and did not issue findings of fact and
conclusions of law.[2]  Jose
raises three issues in this appeal: (1) the trial court’s implied adverse finding
of no conversion of the receipt or its $15,000 cash proceeds is against the
great weight and preponderance of the evidence; (2) conversion was established
as a matter of law; and (3) the application of the statute of frauds or the
statute of limitations was improper.  

II.  Conversion

Jose generally argues that the trial court erred
in not finding that Amy converted the $15,000 INS receipt or its cash
proceeds.  Amy first responds that Jose’s pleadings fail to address conversion
of the receipt and therefore complaints about the receipt’s conversion are not
preserved.  However, the issue of whether the conversion claim was based on
conversion of the receipt or its subsequent cash proceeds was tried by consent
because Amy made no timely objection to evidence of the receipt’s conversion at
trial.  See Tex. R. Civ. P.
67; see, e.g., Sw. Resolution Corp. v. Watson, 964 S.W.2d
262, 264 (Tex. 1997).

A.        Elements


To establish conversion of personal property, a
plaintiff must prove that: (1) the plaintiff owned or had legal possession of
the property or entitlement to possession; (2) the defendant unlawfully and
without authorization assumed and exercised dominion and control over the
property to the exclusion of, or inconsistent with, the plaintiff's rights as
an owner; and (3) the plaintiff suffered injury.  United Mobile Networks,
L.P. v. Deaton, 939 S.W.2d 146, 147-48 (Tex. 1997); Apple Imports, Inc.
v. Koole, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, pet. denied).  If the
defendant originally acquired possession of the plaintiff’s property legally,
the plaintiff must establish that the defendant refused to return the property
after the plaintiff demanded its return.  Presley v. Cooper, 155 Tex. 168, 284 S.W.2d 138, 141 (1955); Apple Imports, 945 S.W.2d at 899.

B.        Standard
of Review 

Jose’s first two issues involve the legal and
factual sufficiency of the evidence.  Jose argues that the evidence established
conversion as a matter of law and that the trial court’s implied finding of no
conversion is against the great weight and preponderance of the evidence.

When
the party that had the burden of proof at trial complains on appeal of the legal
insufficiency of an adverse finding, that party must demonstrate that the
evidence establishes conclusively, i.e., as a matter of law, all vital
facts in support of the finding sought.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  Consistent with City of Keller v. Wilson, we
first search the record for evidence favorable to the adverse finding,
disregarding all contrary evidence unless a reasonable factfinder could not.[3] 
One Ford Mustang v. State, 231 S.W.3d 445, 449 (Tex. App.—Waco 2007, no
pet.) (citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Dallas County Constable v. Garden City Boxing Club, Inc., 219 S.W.3d
613, 616 (Tex. App.—Dallas 2007, no pet.);  Sellers v. Foster, 199
S.W.3d 385, 392 (Tex. App.—Fort Worth 2006, no pet.)).  If we find no evidence
supporting the finding, we then determine whether the contrary was established
as a matter of law.  Id.

When
the party complaining of the factual insufficiency of the evidence had the
burden of proof at trial, that party must demonstrate that the adverse finding
is contrary to the great weight and preponderance of the evidence.  Francis,
46 S.W.3d at 242.  We weigh all the evidence, and we can set aside the adverse
finding only if it is so against the great weight and preponderance of the
evidence that it is clearly wrong and unjust.  Id.

C.        The
Evidence

We begin by reviewing all the relevant evidence in
context.  See City of Keller, 168 S.W. 3d at 811.  Jose testified to the
following pertinent facts:

·       
Amy called and asked Jose to
put up $15,000 for his brother’s bail.  Jose never told Amy that the $15,000
was a gift to her or to Wenceslao, and Amy never expressed gratitude for
receiving the money to indicate to Jose that she understood the money to be a
gift.  Jose told Amy that as soon as the INS case was resolved, he needed his
money back.  Jose previously had loaned Wenceslao money, but the $15,000 was
not loaned to Amy or Wenceslao.  Its purpose was to get Wenceslao out of INS
custody.

 

·       
Jose never told Wenceslao that
the $15,000 was a loan to him and has never approached Wenceslao about payment because
he never thought that Wenceslao possessed the money.

 

·       
Jose has asked Amy either to
get the money from the INS for him or to sign over the INS receipt to him, and
she has refused.

 

·       
Wenceslao has not paid Jose any
of the $15,000.   

 

Amy testified to the
following pertinent facts:

 


 Amy
 said that Jose gave her the money “to go post bond for his brother.”  Her
 understanding was that the $15,000 was a gift from Jose to secure the
 release of his brother, and she has never claimed that the money was a
 loan.  Amy repeatedly testified that she considered the money to be a gift
 and not a loan:


 

Q.        Was it an understanding
that it [the $15,000] was a gift?

A.        My understanding.

Q.        Okay.  And so when –
have you ever made an allegation that it was a gift?

A.        No.

. . .

Q.        Okay.  But you’re
maintaining that it was yours.  Correct?  It was a gift?

A.        Yes.

. . .

Q.        And so when he gave you
the cashier’s check to take in to INS, you at that time did not think that that
money was yours.  Correct?

A.        I just took the check. 
I wasn’t thinking of any – I don’t know what I was thinking at that time.  I just
took the money and took the check and went to see if I could get my husband
out.  That’s all I was thinking about at the time, honestly.

. . .

Q.        Were there any
discussions on the way to San Antonio, at the INS office, at the bank when you
were getting the cashier’s check with Jose Lopez that you were to repay him for
this $15,000 at any point?

A.        No, there wasn’t.

Q.        Did you expect at that
time that you were going to have to pay this $15,000 back?

A.        No.

. . .

Q.        Were there any
discussions with respect to the cashier’s check, that this was his money, he
expected it back, it’s a loan, anything of that nature?

A.        No, sir.

. . .

Q.        Now, ma’am, have you
ever agreed with Jose Lopez, the plaintiff in this case, that you owed him any
money?

A.        No.

Q.        Have you ever agreed
with Jose Lopez, the plaintiff in this case, that you were going to repay him
any money?

A.        No, sir.

Q.        Have there ever been
any discussions between you and Jose Lopez that you owed him any money?

A.        No, sir.

Q.        Have there ever been
any discussions between you and Jose Lopez that you were going to repay him any
money?

A.        No, sir.

. . .

Q.        Have you ever had any
discussions with Mr. Lopez that this was a gift to you, this money?  Did he
say, “I’m giving you this money.  It’s yours as a gift”?

A.        No.  He just said, “Here.  Take it.  Go
get my brother.”

 


 During
 her divorce, Amy told her divorce attorney that money was missing from her
 bank account and that she had the INS receipt in her name:  “that’s what I
 went to talk to him about was the money that was missing from our account,
 our joint checking account between Wenceslao and I, and this money here [the
 $15,000 held by the INS] that is sitting there, that I felt was owed to me.”
  “I felt the money [the $15,000] was mine when it [$14,500] was missing
 from my account, and when [Wenceslao] told me he had paid [Jose] back.  I
 felt it was mine.”  Her divorce attorney told her she could get the money
 from the INS because the receipt was in her name and because “it was
 hers.”  


 


 When
 Amy was required to list her separate property assets in the divorce
 proceeding, she did not list the INS receipt.  She obtained the money from
 the INS in June or July of 2004, after her divorce was final.


 


 Wenceslao
 told her that Jose was “on his back” and that he needed to pay Jose back,
 and Wenceslao indicated to her that the money missing from their joint
 checking account went to paying Jose back.


 

Don Raybold testified to the following pertinent
facts: 


 He
 was Wenceslao’s divorce attorney, and during the divorce when the INS bond
 was discussed, Amy stated that the INS funds belonged to Jose.  A request
 for disclosure was sent to Amy in the divorce case, and the $15,000 was
 not listed as an asset of Amy’s in her response.


 


 He
 stated that the $15,000 was purposely omitted from the divorce decree
 because it was neither an asset nor a liability of Amy or Wenceslao; it
 was understood to belong to Jose.


 


 Later
 in 2006, a few weeks before the trial of this case, Raybold appeared at a
 child-support-related hearing on behalf of Wenceslao, and outside of the
 hearing Amy told Raybold “that the money was Jose’s, but her lawyer said she
 could keep it.”


 

D.        Discussion

Jose,
as the plaintiff, had the burden of proof on his conversion claim.  The trial court
entered a take-nothing judgment on that claim but did not issue findings of
fact and conclusions of law.  Without express findings, in our legal
sufficiency review, we must review the sufficiency of the evidence against all implied
adverse findings necessary to support the judgment.  In the context of the
parties’ pleadings and the evidence in this case, we and the parties can point
to only two possible implied adverse findings necessarily to support the trial
court’s take-nothing judgment on Jose’s conversion claim: an implied adverse finding
of a loan, or an implied adverse finding of a gift.[4] 
With those two possible implied adverse findings and Jose’s appellate issue asserting
that he established his conversion claim as a matter of law, we first must
examine the record for some evidence supporting the two implied adverse findings
of a loan or a gift, disregarding all contrary evidence unless a reasonable
factfinder could not.[5]  See
One Ford Mustang, 231 S.W.3d at 449.  Also, we cannot disregard
undisputed evidence that allows of only one logical inference.  See City of Keller, 168 S.W.3d at 814, 822.

1.  Loan

There
is no legally sufficient evidence that the transaction was a loan.  Amy
testified repeatedly that Jose did not loan her the $15,000.  Her testimony was
that Jose made a $15,000 gift to her, and nothing in the record indicates that
Amy could not distinguish a loan from a gift.  Indeed, the lengths at which Amy
was questioned over whether the $15,000 was a gift or a loan reflect that she
could make such a distinction.

Jose
likewise testified that he did not loan the $15,000 to Amy or Wenceslao.  There
was evidence that Jose had previously loaned Wenceslao money, but with Amy’s
and Jose’s specific and undisputed testimony that this $15,000 transfer was
not a loan, an inference that this transfer also was a loan is neither logical
nor reasonable.  A reasonable factfinder could not disregard the clear and undisputed
testimony of both the plaintiff and the defendant and make an implied adverse finding
of a loan.  See City of Keller, 168 S.W.3d at 807.  To the extent the
trial court impliedly found that Amy lawfully possessed the INS receipt or its
$15,000 cash proceeds because Jose had loaned her the money, no evidence
supports that implied adverse finding because a reasonable factfinder could not disregard the overwhelming and undisputed
contrary evidence that allows of only one logical inference regarding whether
the transfer at issue in this case was a loan—it was not a loan.  See id.
at 814, 822.

2.  Gift

A gift is a voluntary transfer of
property to another made gratuitously and without consideration.  Hilley v.
Hilley, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); Roberts v. Roberts,
999 S.W.2d 424, 431 (Tex. App.—El Paso 1999, no pet.).  Three elements are required to
establish the existence of a gift: (1) the donor’s intent to make a gift; (2)
delivery of the property; and (3) acceptance of the property.  Harrington v.
Bailey, 351 S.W.2d 946, 948 (Tex. Civ. App.—Waco 1961, no writ).  Donative intent must exist at the time of
the transfer, not at the time of a subsequent event.  See, e.g., Rusk
v. Rusk, 5 S.W.3d 299, 303-05 (Tex. App.—Houston
[14th Dist.] 1999, pet. denied).

There is no legally sufficient evidence
of Jose’s intent to make a gift of the $15,000 to Amy that would support an
implied adverse finding that Amy lawfully possessed the INS receipt or its
$15,000 cash proceeds because it was a gift.  Jose testified that he told Amy
that he needed his money back after Wenceslao’s INS case was resolved.  On
cross-examination, Amy testified that Jose never told her that the money was a
gift and that she never thanked Jose for giving her the money, which would have
at least indicated to Jose her understanding that the money was a gift and would
have allowed him the opportunity to controvert her understanding.  Instead, she
was clear that she did not “feel” that the money was a gift until she had
discovered that a similar amount of money was missing from her joint bank account
during her divorce.

The undisputed purpose for Jose’s
delivery of his own money to Amy—for her to deliver the funds to the INS to post
a cash bond for Wenceslao’s release from INS custody—eliminates any possible
reasonable inference of Jose’s intent to gift the money to Amy.  Amy’s belated
determination that Jose had “given” her the money—a determination that she made
only to offset Wenceslao’s alleged taking of a similar amount of money from
their joint checking account—is no evidence of Jose’s donative intent.  Cf. Rusk,
5 S.W.3d at 303-05 & nn.3, 5 (holding that trial court’s finding that stock
transfer from parent to child was not a premarital gift was against the great
weight because of undisputed underlying evidence and overwhelming contrary
evidence that premarital gift was made).  Viewing the undisputed underlying
facts and purpose of the transfer and Amy’s testimony about why and when she
determined that the money was a gift in the light favorable to the trial
court’s implied adverse finding of a gift, we conclude that a reasonable
factfinder could not have credited Amy’s testimony as some evidence of Jose’s
donative intent and could not have disregarded the undisputed underlying
evidence about the money’s transfer.  See City of Keller, 168 S.W.3d at
807, 814, 827; Rusk, 5 S.W.3d at 303 n.3 (“we cannot ignore undisputed
evidence and otherwise corroborated proof”).

The undisputed underlying evidence
points to a bailment of Jose’s money between Jose and Amy.[6]  See Small v. Small, 216
S.W.3d 872, 877-78 (Tex. App.—Beaumont 2007, pet. denied) (noting
that, in the case of alleged conversion of diamond, plaintiffs’ version of
transfer of diamond reflected a bailment).  Amy’s possession of the funds and cashier’s check
was for the sole purpose of delivering it to the INS on Jose’s behalf to secure
Wenceslao’s release.  Even though the INS issued the receipt in Amy’s name, the
receipt did not transfer ownership of the money to her.  It merely allowed her
to obtain the return of the money from the INS.  

3.  Conversion as a Matter of Law

Having determined that there is no evidence to
support the adverse implied findings of either a loan or a gift, we necessarily
conclude that the only reasonable finding on the evidence in the record is that
Amy unlawfully exercised dominion and control over the $15,000 to the exclusion
of Jose’s rights as the owner upon his demand that she return it.

The evidence is undisputed that (1) the purpose
for the delivery of Jose’s $15,000 to Amy was to put up a cash bond for
Wenceslao; (2) Amy posted the bond in Jose’s stead only because Jose did not
want to risk being placed in INS custody; and (3) several years later Amy “felt”
that the money was hers to offset Wenceslao’s allegedly taking an almost
identical amount from their joint bank account.  In other words, Amy admittedly
took Jose’s money because Wenceslao took a similar amount of money from Amy and
Wenceslao’s joint account.  Jose thus conclusively established that the money
belonged to him and that Amy unlawfully exercised control over the money
adverse to his ownership; he conclusively established the first two elements of
his conversion claim.  We sustain in part issue two.

4.  Injury

On the third element of conversion—the plaintiff
suffered injury—Amy testified several times that Wenceslao told her that he had
paid Jose back.  She also testified that during her divorce, she had her bank
records analyzed and over $14,500 was unaccounted for and was withdrawn by
Wenceslao.  However, on cross-examination, Amy testified as follows: 

[Q]: And
so it’s your testimony that my client has been paid back already.  Is that it?


 

[A:]  According
to his brother, yes.  And I don’t know that.  I don’t have any record.  I don’t
see that, but that’s what I was told, yes.  

 

She later testified that she did not know where
the missing money had gone from her bank account.  Jose unequivocally testified
that Wenceslao never paid him back any of the $15,000.

Amy’s testimony, while equivocal, is some evidence
that Jose was repaid by Wenceslao, so we cannot say that Jose conclusively
established that he suffered a $15,000 injury from Amy’s conversion.  But
considering all the evidence on injury—Amy’s testimony that she was told that Jose
was repaid around $14,500, and Jose’s testimony that he was not repaid at all—the
trial court’s implied adverse finding that Jose suffered no injury is against
the great weight and preponderance of the evidence.  We therefore sustain in
part issue one.

III.  Affirmative Defenses

We now turn to whether Amy’s affirmative defenses
are correctly before this court.  On the day of trial, without requesting leave
of court, Amy tendered her supplemental answer that asserted the statute of
frauds and the statute of limitations as affirmative defenses.[7]

  Jose’s third issue argues that the application
of the statute of frauds and statute of limitations was improper because those
defenses were not timely pled, contending that Rule 63 of the Texas Rules of
Civil Procedure allows responsive pleadings to be filed within seven days of
trial only when leave of court is obtained.  Tex.
R. Civ. P. 63.  However, Jose failed to object to this pleading at
trial, and the defenses were therefore tried by consent.  See Tex. R. Civ. P. 67.  We overrule Jose’s
third issue in part.

We finally address the trial court’s implied adverse
finding on Amy’s affirmative defenses of the statute of frauds and the statute
of limitations.  Within this third issue, Jose challenges the legal sufficiency
of the trial court’s implied adverse findings that the statute of frauds and the
statute of limitations barred Jose’s conversion claim.  Because we have
concluded that the transfer of the money was not a loan, the statute of frauds
is inapplicable to this case.  We further hold that the statute of limitations
does not bar Jose’s conversion claim.

Amy had the burden of proof at trial to prove that
Jose did not bring his claim within two years of his demand and her refusal of
the $15,000.  Amy argues that the statute of limitations ran because the cause
of action, if any, accrued when she caused the INS receipt to reflect that she
was the owner of the funds.  But when a party accused of illegally converting
property originally had lawful possession, the cause of action for conversion
does not arise, and the limitations period does not begin to run, until (1) the
return of the property has been demanded and refused, or (2) the party in
possession has unequivocally exercised acts of dominion over the property
inconsistent with the claims of the owner.  Sharpe v. Roman Catholic Diocese,
97 S.W.3d 791, 796 (Tex. App.—Dallas 2003, pet. denied).

Jose testified that he asked Amy about the money
immediately after the INS dismissed Wenceslao’s case and she responded that she
could not locate the receipt.  Amy testified that Jose did not ask her about
the money or the receipt until May 2005, and she replied that he needed to
speak to Wenceslao regarding the matter.  There is no evidence that Jose
demanded return and Amy refused return of the money more than two years before
suit was filed.  Furthermore, Amy’s testimony conclusively established that her
refusal to return the money upon Jose’s request occurred in May 2005, and Jose
filed suit in July 2005.  And even if the date that Amy obtained the funds from
the INS is when she unequivocally exercised dominion over the funds
inconsistent with Jose’s claim as the owner, her testimony conclusively
established that date as June or July of 2004, which is within two years of the
suit’s filing.  Accordingly, there is no legally sufficient evidence to support
the trial court’s implied finding that Jose demanded return and Amy refused
return of the money more than two years before suit was filed.  We sustain in
part Jose’s third issue.

IV.  Conclusion

Having sustained in part Jose’s three issues, we
reverse the trial court's judgment and remand the case for new trial.   

 

 

GLEN HARRISON

Judge

Before Chief Justice
Gray,

            Justice
Vance, and

            Judge Harrison[8]

            (Chief
Justice Gray dissents with a note)*

Reversed and remanded

Opinion delivered and
filed November 5, 2008

[CV06]

 

 

 

*(Chief Justice Gray would request a response to
the motion for rehearing with a view to granting it.  He would not rewrite the
opinion to address either the motion for rehearing (or the dissenting opinion)
without requesting a response.  He does not withdraw his dissenting opinion
issued on August 13, 2008, so another dissenting opinion will not issue.  He
notes, however, that the Court is in error in assuming the trial court had to
impliedly make any findings.  Jose had to prove conversion.  He failed to
convince the trial court.  In his review of the trial court’s judgment he
cannot conclude that the trial court erred.  It is improper to substitute the
Court’s judgment on a review of a cold record for the trial court’s judgment
with the trial court’s ability to evaluate the credibility and demeanor of the
live witnesses.  Because Jose had the burden of proof and, even according to
the Court, failed to prove the legal relationship under which Amy was in
possession of the receipt or the proceeds thereof, the trial court did not err
when it rendered a take nothing judgment against Jose.  Additionally there is
some question of whether a party that lost on a theory tried by implied consent
can appeal that loss.  The theory of trial-by-implied-consent is a judgment
saving theory.)









[1] The source of the funds in Jose’s trust account
was a judgment he had obtained for a serious head injury he had suffered in an
auto accident.





[2] Jose requested findings of fact
and conclusions of law, but when the trial court did not file the findings and
conclusions, Jose did not file a “Notice of Past Due Findings of Fact and
Conclusions of Law.”  See Tex. R.
Civ. P. 297.  When the trial court does not issue findings of fact and
conclusions of law, all fact findings necessary to support the trial court’s
judgment are implied.  Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  When the appellate record includes a reporter's record, however, these implied
findings are not conclusive and may be challenged for legal and factual
sufficiency.  Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989).  





[3] We must consider whether the evidence at trial
would enable a reasonable and fair-minded factfinder to reach the finding under
review, crediting favorable evidence if a reasonable factfinder could and
disregarding contrary evidence unless a reasonable factfinder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 822, 827 (Tex. 2005).  We cannot
disregard undisputed evidence that allows of only one logical inference
because, by definition, such evidence can be viewed in only one light, and a
reasonable factfinder can reach only one conclusion from it.  Id. at
814, 822.





[4] When he announced his ruling, the trial judge
stated that the thought the $15,000 was a loan, but such an oral announcement
is not a reviewable finding of fact or conclusion of law.  See Larry F. Smith,
Inc. v. The Weber Co., 110 S.W.3d 611, 615 (Tex.
App.—Dallas 2003, pet. denied).





[5] In examining the record for some evidence supporting
the implied adverse findings, we are not shifting the burden of proof; we are applying
the proper standard of review on a “matter of law” appellate issue.





[6]  “[B]ailment” is defined as follows: 

A delivery of personal property
by one person (the bailor) to another (the bailee) who holds the property for a
certain purpose under an express or implied-in-fact contract.  Unlike a sale of
personal property, a bailment involves a change in possession but not title. 

Black’s Law Dictionary 151-52 (8th ed. 2004).  The elements of a bailment are:  (1) the delivery of
personal property by one person to another in trust for a specific purpose; (2)
acceptance of such delivery; (3) an express or implied contract that the trust
will be carried out; and (4) an understanding under the terms of the contract
that the property will be returned to the transferor or dealt with as the
transferor directs.  Small, 216 S.W.3d at 877-78.

                The dissent misconstrues our reference to
bailment.  By noting bailment, we do not intimate that Jose established a
breach-of-contract claim for breach of a bailment contract.  Rather, Texas law is clear that a conversion claim lies when a bailee refuses to return bailed
property.  See Presley v. Cooper, 155 Tex.
168, 284 S.W.2d 138, 140 (1955); Texas Diamond
Int’l, Inc. v. Tiffany & Co., 47 S.W.3d
589, 592 (Tex. App.—San Antonio 2001, pet. denied); International
Freight Forwarding, Inc. v. American Flange, 993 S.W.2d 262, 266,
269 (Tex. App.—San Antonio 1999, no pet.); Kirkland
v. Mission Pipe & Supply Co., 182 S.W.2d 854, 855 (Tex.
Civ. App. 1944, writ ref’d w.o.m.); see also Barker v. Eckman, 213 S.W.3d
306, 310 (Tex. 2006) (noting that bailment claims “generally can be brought as contract or tort claims depending on
the particular facts of the case and the type of action the plaintiff chooses
to assert”).  In this case, Jose chose to sue Amy in tort for conversion, so by
referring to bailment we are not holding that Jose conclusively proved an
unpled claim or theory.





[7] The trial judge orally stated
that he thought the $15,000 was a loan and was therefore barred by the statute
of frauds because the agreement was not in writing.





[8] Glen Harrison, Judge of the 32nd District Court
of Fisher, Mitchell, and Nolan Counties, sitting by assignment of the Chief
Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government
Code.  See Tex. Gov’t Code Ann.
§ 74.003(h) (Vernon 2005).