

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00002-CV

**JOSE LUIS LOPEZ,**

                                             **Appellant**

 **v.**

**AMY ELIZABETH LOPEZ,**

                                             **Appellee**

---

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2005-2429-1

---

## O P I N I O N

---

Jose Lopez sued Amy Lopez (now Amy Avila), his former sister-in-law, for conversion of $15,000. After a bench trial, the court rendered a take-nothing judgment. Upon review of the legal and factual sufficiency of the evidence, we will reverse and remand for a new trial.

### I. Background

In September 2002, Wenceslao Lopez, Jose's brother and Amy's then-husband, was detained by the Immigration and Naturalization Service (INS) in San Antonio. A

cash bond for Wenceslao's release was set at $15,000. Jose got $15,000 in cash from his trust account to put up the cash bond.[1] Amy and Jose then drove together from Waco to San Antonio to obtain Wenceslao's release. When they arrived at INS, Jose asked Amy to go inside to post the cash bond because he was concerned that the INS would also detain him. Amy went in with the money, but the INS did not accept cash and asked Amy to return with a cashier's check. Amy and Jose went to a bank, Amy gave the cash back to Jose, and he secured a cashier's check payable to the INS with his name as the remitter. Jose then gave the check to Amy, who returned to the INS, posted the bond using the cashier's check, and obtained a receipt for it in her name. The receipt allowed only the person who posted the bond to reclaim the money once the INS case was concluded.

In 2003, Amy and Wenceslao separated and began the divorce process. The INS receipt became an issue because Wenceslao's INS case had been resolved, the cash bond could be released, and Wenceslao told Amy that Jose wanted his money back. Approximately six months after the divorce was final in December 2003, Amy sent the necessary paperwork to the INS and obtained the $15,000, which she then spent.

In July 2005, Jose filed a "Motion to Show Cause" seeking a court order that Amy surrender possession of the INS receipt. When Amy refused to return the receipt or the money, Jose filed an amended petition alleging that Amy had converted the $15,000. On the day of trial, Amy filed a supplemental answer that asserted the statute of

---

[1] The source of the funds in Jose's trust account was a judgment he had obtained for a serious head injury he had suffered in an auto accident.

limitations and the statute of frauds as affirmative defenses.

At trial, Jose testified that the $15,000 cash bond was not a gift or a loan and that he expected return of the cashier's check proceeds held by the INS. Amy testified that she considered the money to be a gift for securing Wenceslao's release. The trial court rendered a take-nothing judgment against Jose and did not issue findings of fact and conclusions of law.[2] Jose raises three issues in this appeal: (1) the trial court's implied adverse finding of no conversion of the receipt or its $15,000 cash proceeds is against the great weight and preponderance of the evidence; (2) conversion was established as a matter of law; and (3) the application of the statute of frauds or the statute of limitations was improper.

## II. Conversion

Jose generally argues that the trial court erred in not finding that Amy converted the $15,000 INS receipt or its cash proceeds. Amy first responds that Jose's pleadings fail to address conversion of the receipt and therefore complaints about the receipt's conversion are not preserved. However, the issue of whether the conversion claim was based on conversion of the receipt or its subsequent cash proceeds was tried by consent because Amy made no timely objection to evidence of the receipt's conversion at trial. *See* TEX. R. CIV. P. 67; *see, e.g., Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 264 (Tex.

---

[2] Jose requested findings of fact and conclusions of law, but when the trial court did not file the findings and conclusions, Jose did not file a "Notice of Past Due Findings of Fact and Conclusions of Law." *See* TEX. R. CIV. P. 297. When the trial court does not issue findings of fact and conclusions of law, all fact findings necessary to support the trial court's judgment are implied. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). When the appellate record includes a reporter's record, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

1997).

## A.    Elements

To establish conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997); *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, pet. denied). If the defendant originally acquired possession of the plaintiff's property legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return. *Presley v. Cooper*, 155 Tex. 168, 284 S.W.2d 138, 141 (1955); *Apple Imports*, 945 S.W.2d at 899.

## B.    Standard of Review

Jose's first two issues involve the legal and factual sufficiency of the evidence. Jose argues that the evidence established conversion as a matter of law and that the trial court's implied finding of no conversion is against the great weight and preponderance of the evidence.

When the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). Consistent with *City of Keller v. Wilson*, we first search the record for evidence favorable to the adverse finding,

disregarding all contrary evidence unless a reasonable factfinder could not.[3] *One Ford Mustang v. State,* 231 S.W.3d 445, 449 (Tex. App.—Waco 2007, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dallas County Constable v. Garden City Boxing Club, Inc.,* 219 S.W.3d 613, 616 (Tex. App.—Dallas 2007, no pet.); *Sellers v. Foster,* 199 S.W.3d 385, 392 (Tex. App.—Fort Worth 2006, no pet.)).  If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.  *Id.*

When the party complaining of the factual insufficiency of the evidence had the burden of proof at trial, that party must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence.  *Francis,* 46 S.W.3d at 242.  We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.  *Id.*

## C.    The Evidence

We begin by reviewing all the relevant evidence in context.  *See City of Keller*, 168 S.W. 3d at 811.  Jose testified to the following pertinent facts:

- Amy called and asked Jose to put up $15,000 for his brother's bail.  Jose never told Amy that the $15,000 was a gift to her or to Wenceslao, and Amy never expressed gratitude for receiving the money to indicate to Jose that she understood the money to be a gift.  Jose told Amy that as soon as the INS case was resolved, he needed his money back.  Jose previously had loaned Wenceslao

---

[3] We must consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the finding under review, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).  We cannot disregard undisputed evidence that allows of only one logical inference because, by definition, such evidence can be viewed in only one light, and a reasonable factfinder can reach only one conclusion from it.  *Id.* at 814, 822.

money, but the $15,000 was not loaned to Amy or Wenceslao. Its purpose was to get Wenceslao out of INS custody.

- Jose never told Wenceslao that the $15,000 was a loan to him and has never approached Wenceslao about payment because he never thought that Wenceslao possessed the money.

- Jose has asked Amy either to get the money from the INS for him or to sign over the INS receipt to him, and she has refused.

- Wenceslao has not paid Jose any of the $15,000.

Amy testified to the following pertinent facts:

- Amy said that Jose gave her the money "to go post bond for his brother." Her understanding was that the $15,000 was a gift from Jose to secure the release of his brother, and she has never claimed that the money was a loan. Amy repeatedly testified that she considered the money to be a gift and not a loan:

  Q. Was it an understanding that it [the $15,000] was a gift?
  A. My understanding.
  Q. Okay. And so when – have you ever made an allegation that it was a gift?
  A. No.
  . . .
  Q. Okay. But you're maintaining that it was yours. Correct? It was a gift?
  A. Yes.
  . . .
  Q. And so when he gave you the cashier's check to take in to INS, you at that time did not think that that money was yours. Correct?
  A. I just took the check. I wasn't thinking of any – I don't know what I was thinking at that time. I just took the money and took the check and went to see if I could get my husband out. That's all I was thinking about at the time, honestly.
  . . .
  Q. Were there any discussions on the way to San Antonio, at the INS office, at the bank when you were getting the cashier's check with Jose Lopez that you were to repay him for this $15,000 at any point?
  A. No, there wasn't.
  Q. Did you expect at that time that you were going to have to pay this $15,000 back?
  A. No.

. . .

Q. Were there any discussions with respect to the cashier's check, that this was his money, he expected it back, it's a loan, anything of that nature?

A. No, sir.

. . .

Q. Now, ma'am, have you ever agreed with Jose Lopez, the plaintiff in this case, that you owed him any money?

A. No.

Q. Have you ever agreed with Jose Lopez, the plaintiff in this case, that you were going to repay him any money?

A. No, sir.

Q. Have there ever been any discussions between you and Jose Lopez that you owed him any money?

A. No, sir.

Q. Have there ever been any discussions between you and Jose Lopez that you were going to repay him any money?

A. No, sir.

. . .

Q. Have you ever had any discussions with Mr. Lopez that this was a gift to you, this money? Did he say, "I'm giving you this money. It's yours as a gift"?

A. No. He just said, "Here. Take it. Go get my brother."

- During her divorce, Amy told her divorce attorney that money was missing from her bank account and that she had the INS receipt in her name: "that's what I went to talk to him about was the money that was missing from our account, our joint checking account between Wenceslao and I, and this money here [the $15,000 held by the INS] that is sitting there, that I felt was owed to me." "I felt the money [the $15,000] was mine when it [$14,500] was missing from my account, and when [Wenceslao] told me he had paid [Jose] back. I felt it was mine." Her divorce attorney told her she could get the money from the INS because the receipt was in her name and because "it was hers."

- When Amy was required to list her separate property assets in the divorce proceeding, she did not list the INS receipt. She obtained the money from the INS in June or July of 2004, after her divorce was final.

- Wenceslao told her that Jose was "on his back" and that he needed to pay Jose back, and Wenceslao indicated to her that the money missing from their joint checking account went to paying Jose back.

Don Raybold testified to the following pertinent facts:

- He was Wenceslao's divorce attorney, and during the divorce when the INS bond was discussed, Amy stated that the INS funds belonged to Jose. A request for disclosure was sent to Amy in the divorce case, and the $15,000 was not listed as an asset of Amy's in her response.

- He stated that the $15,000 was purposely omitted from the divorce decree because it was neither an asset nor a liability of Amy or Wenceslao; it was understood to belong to Jose.

- Later in 2006, a few weeks before the trial of this case, Raybold appeared at a child-support-related hearing on behalf of Wenceslao, and outside of the hearing Amy told Raybold "that the money was Jose's, but her lawyer said she could keep it."

## D.    Discussion

Jose, as the plaintiff, had the burden of proof on his conversion claim. The trial court entered a take-nothing judgment on that claim but did not issue findings of fact and conclusions of law. Without express findings, in our legal sufficiency review, we must review the sufficiency of the evidence against all implied adverse findings necessary to support the judgment. In the context of the parties' pleadings and the evidence in this case, we and the parties can point to only two possible implied adverse findings necessarily to support the trial court's take-nothing judgment on Jose's conversion claim: an implied adverse finding of a loan, or an implied adverse finding of a gift.[4] With those two possible implied adverse findings and Jose's appellate issue asserting that he established his conversion claim as a matter of law, we first must examine the record for some evidence supporting the two implied adverse findings of a

---

[4] When he announced his ruling, the trial judge stated that the thought the $15,000 was a loan, but such an oral announcement is not a reviewable finding of fact or conclusion of law. *See Larry F. Smith, Inc. v. The Weber Co.,* 110 S.W.3d 611, 615 (Tex. App.—Dallas 2003, pet. denied).

loan or a gift, disregarding all contrary evidence unless a reasonable factfinder could not.[5]  *See One Ford Mustang*, 231 S.W.3d at 449.  Also, we cannot disregard undisputed evidence that allows of only one logical inference.  *See City of Keller*, 168 S.W.3d at 814, 822.

### 1. *Loan*

There is no legally sufficient evidence that the transaction was a loan.  Amy testified repeatedly that Jose did not loan her the $15,000.  Her testimony was that Jose made a $15,000 gift to her, and nothing in the record indicates that Amy could not distinguish a loan from a gift.  Indeed, the lengths at which Amy was questioned over whether the $15,000 was a gift or a loan reflect that she could make such a distinction.

Jose likewise testified that he did not loan the $15,000 to Amy or Wenceslao. There was evidence that Jose had previously loaned Wenceslao money, but with Amy's and Jose's specific and undisputed testimony that *this* $15,000 transfer was not a loan, an inference that this transfer also was a loan is neither logical nor reasonable.  A reasonable factfinder could not disregard the clear and undisputed testimony of both the plaintiff and the defendant and make an implied adverse finding of a loan.  *See City of Keller*, 168 S.W.3d at 807.  To the extent the trial court impliedly found that Amy lawfully possessed the INS receipt or its $15,000 cash proceeds because Jose had loaned her the money, no evidence supports that implied adverse finding because a reasonable factfinder could not disregard the overwhelming and undisputed contrary evidence

---

[5] In examining the record for some evidence supporting the implied adverse findings, we are not shifting the burden of proof; we are applying the proper standard of review on a "matter of law" appellate issue.

that allows of only one logical inference regarding whether the transfer at issue in this case was a loan—it was not a loan. *See id.* at 814, 822.

### 2. *Gift*

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); *Roberts v. Roberts*, 999 S.W.2d 424, 431 (Tex. App.—El Paso 1999, no pet.). Three elements are required to establish the existence of a gift: (1) the donor's intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Harrington v. Bailey*, 351 S.W.2d 946, 948 (Tex. Civ. App.—Waco 1961, no writ). Donative intent must exist at the time of the transfer, not at the time of a subsequent event. *See, e.g., Rusk v. Rusk*, 5 S.W.3d 299, 303-05 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

There is no legally sufficient evidence of Jose's intent to make a gift of the $15,000 to Amy that would support an implied adverse finding that Amy lawfully possessed the INS receipt or its $15,000 cash proceeds because it was a gift. Jose testified that he told Amy that he needed his money back after Wenceslao's INS case was resolved. On cross-examination, Amy testified that Jose never told her that the money was a gift and that she never thanked Jose for giving her the money, which would have at least indicated to Jose her understanding that the money was a gift and would have allowed him the opportunity to controvert her understanding. Instead, she was clear that she did not "feel" that the money was a gift *until* she had discovered that a similar amount of money was missing from her joint bank account during her divorce.

The undisputed purpose for Jose's delivery of his own money to Amy—for her

to deliver the funds to the INS to post a cash bond for Wenceslao's release from INS custody—eliminates any possible reasonable inference of Jose's intent to gift the money to Amy. Amy's belated determination that Jose had "given" her the money—a determination that she made only to offset Wenceslao's alleged taking of a similar amount of money from their joint checking account—is no evidence of Jose's donative intent. *Cf. Rusk,* 5 S.W.3d at 303-05 & nn.3, 5 (holding that trial court's finding that stock transfer from parent to child was not a premarital gift was against the great weight because of undisputed underlying evidence and overwhelming contrary evidence that premarital gift was made). Viewing the undisputed underlying facts and purpose of the transfer and Amy's testimony about why and when she determined that the money was a gift in the light favorable to the trial court's implied adverse finding of a gift, we conclude that a reasonable factfinder could not have credited Amy's testimony as some evidence of Jose's donative intent and could not have disregarded the undisputed underlying evidence about the money's transfer. *See City of Keller*, 168 S.W.3d at 807, 814, 827; *Rusk,* 5 S.W.3d at 303 n.3 ("we cannot ignore undisputed evidence and otherwise corroborated proof").

The undisputed underlying evidence points to a bailment of Jose's money between Jose and Amy.[6] *See Small v. Small*, 216 S.W.3d 872, 877-78 (Tex. App.—

---

[6] "[B]ailment" is defined as follows:

> A delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract. Unlike a sale of personal property, a bailment involves a change in possession but not title.

BLACK'S LAW DICTIONARY 151-52 (8th ed. 2004). The elements of a bailment are: (1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery;

Beaumont 2007, pet. denied) (noting that, in the case of alleged conversion of diamond, plaintiffs' version of transfer of diamond reflected a bailment). Amy's possession of the funds and cashier's check was for the sole purpose of delivering it to the INS on Jose's behalf to secure Wenceslao's release. Even though the INS issued the receipt in Amy's name, the receipt did not transfer ownership of the money to her. It merely allowed her to obtain the return of the money from the INS.

### 3. *Conversion as a Matter of Law*

Having determined that there is no evidence to support the adverse implied findings of either a loan or a gift, we necessarily conclude that the only reasonable finding on the evidence in the record is that Amy unlawfully exercised dominion and control over the $15,000 to the exclusion of Jose's rights as the owner upon his demand that she return it.

The evidence is undisputed that (1) the purpose for the delivery of Jose's $15,000 to Amy was to put up a cash bond for Wenceslao; (2) Amy posted the bond in Jose's stead only because Jose did not want to risk being placed in INS custody; and (3)

---

(3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Small*, 216 S.W.3d at 877-78.

The dissent misconstrues our reference to bailment. By noting bailment, we do not intimate that Jose established a breach-of-contract claim for breach of a bailment contract. Rather, Texas law is clear that a conversion claim lies when a bailee refuses to return bailed property. *See Presley v. Cooper,* 155 Tex. 168, 284 S.W.2d 138, 140 (1955); *Texas Diamond Int'l, Inc. v. Tiffany & Co.,* 47 S.W.3d 589, 592 (Tex. App.— San Antonio 2001, pet. denied); *International Freight Forwarding, Inc. v. American Flange,* 993 S.W.2d 262, 266, 269 (Tex. App.—San Antonio 1999, no pet.); *Kirkland v. Mission Pipe & Supply Co.,* 182 S.W.2d 854, 855 (Tex. Civ. App. 1944, writ ref'd w.o.m.); *see also Barker v. Eckman,* 213 S.W.3d 306, 310 (Tex. 2006) (noting that bailment claims "generally can be brought as contract or tort claims depending on the particular facts of the case and the type of action the plaintiff chooses to assert"). In this case, Jose chose to sue Amy in tort for conversion, so by referring to bailment we are not holding that Jose conclusively proved an unpled claim or theory.

several years later Amy "felt" that the money was hers to offset Wenceslao's allegedly taking an almost identical amount from their joint bank account. In other words, Amy admittedly took Jose's money because Wenceslao took a similar amount of money from Amy and Wenceslao's joint account. Jose thus conclusively established that the money belonged to him and that Amy unlawfully exercised control over the money adverse to his ownership; he conclusively established the first two elements of his conversion claim. We sustain in part issue two.

**4. *Injury***

On the third element of conversion—the plaintiff suffered injury—Amy testified several times that Wenceslao told her that he had paid Jose back. She also testified that during her divorce, she had her bank records analyzed and over $14,500 was unaccounted for and was withdrawn by Wenceslao. However, on cross-examination, Amy testified as follows:

> **[Q]:** And so it's your testimony that my client has been paid back already. Is that it?
>
> **[A:]** According to his brother, yes. And I don't know that. I don't have any record. I don't see that, but that's what I was told, yes.

She later testified that she did not know where the missing money had gone from her bank account. Jose unequivocally testified that Wenceslao never paid him back any of the $15,000.

Amy's testimony, while equivocal, is some evidence that Jose was repaid by Wenceslao, so we cannot say that Jose conclusively established that he suffered a $15,000 injury from Amy's conversion. But considering all the evidence on injury—

Amy's testimony that she was told that Jose was repaid around $14,500, and Jose's testimony that he was not repaid at all—the trial court's implied adverse finding that Jose suffered no injury is against the great weight and preponderance of the evidence. We therefore sustain in part issue one.

### III. Affirmative Defenses

We now turn to whether Amy's affirmative defenses are correctly before this court. On the day of trial, without requesting leave of court, Amy tendered her supplemental answer that asserted the statute of frauds and the statute of limitations as affirmative defenses.[7]

Jose's third issue argues that the application of the statute of frauds and statute of limitations was improper because those defenses were not timely pled, contending that Rule 63 of the Texas Rules of Civil Procedure allows responsive pleadings to be filed within seven days of trial only when leave of court is obtained. TEX. R. CIV. P. 63. However, Jose failed to object to this pleading at trial, and the defenses were therefore tried by consent. *See* TEX. R. CIV. P. 67. We overrule Jose's third issue in part.

We finally address the trial court's implied adverse finding on Amy's affirmative defenses of the statute of frauds and the statute of limitations. Within this third issue, Jose challenges the legal sufficiency of the trial court's implied adverse findings that the statute of frauds and the statute of limitations barred Jose's conversion claim. Because we have concluded that the transfer of the money was not a loan, the statute of frauds is inapplicable to this case. We further hold that the statute of limitations does not bar

---

[7] The trial judge orally stated that he thought the $15,000 was a loan and was therefore barred by the statute of frauds because the agreement was not in writing.

Jose's conversion claim.

Amy had the burden of proof at trial to prove that Jose did not bring his claim within two years of his demand and her refusal of the $15,000. Amy argues that the statute of limitations ran because the cause of action, if any, accrued when she caused the INS receipt to reflect that she was the owner of the funds. But when a party accused of illegally converting property originally had lawful possession, the cause of action for conversion does not arise, and the limitations period does not begin to run, until (1) the return of the property has been demanded and refused, or (2) the party in possession has unequivocally exercised acts of dominion over the property inconsistent with the claims of the owner. *Sharpe v. Roman Catholic Diocese,* 97 S.W.3d 791, 796 (Tex. App.—Dallas 2003, pet. denied).

Jose testified that he asked Amy about the money immediately after the INS dismissed Wenceslao's case and she responded that she could not locate the receipt. Amy testified that Jose did not ask her about the money or the receipt until May 2005, and she replied that he needed to speak to Wenceslao regarding the matter. There is no evidence that Jose demanded return and Amy refused return of the money more than two years before suit was filed. Furthermore, Amy's testimony conclusively established that her refusal to return the money upon Jose's request occurred in May 2005, and Jose filed suit in July 2005. And even if the date that Amy obtained the funds from the INS is when she unequivocally exercised dominion over the funds inconsistent with Jose's claim as the owner, her testimony conclusively established that date as June or July of 2004, which is within two years of the suit's filing. Accordingly, there is no legally

sufficient evidence to support the trial court's implied finding that Jose demanded return and Amy refused return of the money more than two years before suit was filed. We sustain in part Jose's third issue.

## IV. Conclusion

Having sustained in part Jose's three issues, we reverse the trial court's judgment and remand the case for new trial.

GLEN HARRISON
Judge

Before Chief Justice Gray,
        Justice Vance, and
        Judge Harrison[8]
        (Chief Justice Gray dissents with a note)*
Reversed and remanded
Opinion delivered and filed November 5, 2008
[CV06]

*(Chief Justice Gray would request a response to the motion for rehearing with a view to granting it. He would not rewrite the opinion to address either the motion for rehearing (or the dissenting opinion) without requesting a response. He does not withdraw his dissenting opinion issued on August 13, 2008, so another dissenting opinion will not issue. He notes, however, that the Court is in error in assuming the trial court had to impliedly make any findings. Jose had to prove conversion. He failed to convince the trial court. In his review of the trial court's judgment he cannot conclude that the trial court erred. It is improper to substitute the Court's judgment on a review of a cold record for the trial court's judgment with the trial court's ability to evaluate the credibility and demeanor of the live witnesses. Because Jose had the burden of proof and, even according to the Court, failed to prove the legal relationship under which Amy was in possession of the receipt or the proceeds thereof, the trial court did not err when it rendered a take nothing judgment against Jose. Additionally there is some

---

[8] Glen Harrison, Judge of the 32nd District Court of Fisher, Mitchell, and Nolan Counties, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).

question of whether a party that lost on a theory tried by implied consent can appeal that loss. The theory of trial-by-implied-consent is a judgment saving theory.)